1   EDMUND G. BROWN JR.
    Attorney General of the State of California
2   DAVID S. CHANEY
    Chief Assistant Attorney General
3   ROCHELLE C. EAST - 183792
    Senior Assistant Attorney General
4   JONATHAN L. WOLFF - 193479
    Supervising Deputy Attorney General
5   LISA A. TILLMAN - 126424
    Deputy Attorney General
6   KYLE A. LEWIS - 201041
    Deputy Attorney General
7   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
8   Telephone: (415) 703-5677
    Facsimile: (415) 703-5843
9   kyle.lewis@doj.ca.gov

HANSON BRIDGETT LLP
JERROLD C. SCHAEFER - 39374
PAUL B. MELLO - 179755
S. ANNE JOHNSON - 197415
SAMANTHA TAMA - 240280
RENJU P. JACOB - 242388
425 Market Street, 26th Floor
San Francisco, CA 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366
jschaefer@hansonbridgett.com
pmello@hansonbridgett.com
stama@hansonbridgett.com
rjacob@hansonbridgett.com

10  Attorneys for Defendants

11              **UNITED STATES DISTRICT COURT**

12       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

13        **AND THE EASTERN DISTRICT OF CALIFORNIA**

14   **UNITED STATES DISTRICT COURT COMPOSED OF THREE JUDGES**

15      **PURSUANT TO SECTION 2284, TITLE 28 UNITED STATES CODE**

16
    RALPH COLEMAN, et al.,
17
                Plaintiffs,
18
19          v.

    ARNOLD SCHWARZENEGGER, et al.,
20
                Defendants.
21

No. 2:90-cv-00520 LKK JFM P

<u>THREE-JUDGE COURT</u>

22   MARCIANO PLATA, et al.,

                Plaintiffs,
23
24          v.

    ARNOLD SCHWARZENEGGER, et al.,
25
                Defendants
26
27

No. C01-1351 TEH

<u>THREE-JUDGE COURT</u>

**DECLARATION OF SAMANTHA TAMA IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL THE PRIVILEGED DEPOSITION TESTIMONY OF MATTHEW CATE**

**To: Magistrate Judge Moulds**

28

- 1 -

1       I, Samantha Tama, declare as follows:

2       1.      I am an associate in the law offices of Hanson Bridgett LLP, counsel of

3       record for Defendants in the *Plata v. Schwarzenegger* Three-Judge Panel matter.  I

4       submit this declaration in support of Defendants' opposition to Plaintiffs' motion to

5       compel the privileged deposition testimony of Matthew Cate.  I have personal knowledge

6       of the matters stated in this declaration, and can competently testify to these matters if

7       called upon to do so.

8       2.      On Wednesday, September 3, 2008, at 4:39 p.m., I received a voicemail

9       from Rebekah Evenson at the Prison Law Office, counsel for Plaintiffs.  Ms. Evenson

10      sought to establish a briefing schedule regarding Plaintiffs' anticipated motion to compel

11      the privileged deposition testimony of Matthew Cate regarding his and other government

12      decision-makers' mental processes.  I returned Ms. Evenson's call on the morning of

13      Thursday, September 4, 2008.  We reached a tentative agreement to submit joint

14      briefing to the Court by Friday, September 12, 2008.

15      3.      Ms. Evenson and I then called Haven Gracey, clerk to Magistrate Judge

16      Moulds, to set up a hearing date on Plaintiffs' motion.  Ms. Evenson relayed the parties'

17      proposed briefing schedule, and requested a hearing date of either September 15, 16, or

18      17, 2008.  Ms. Gracey informed the parties that she would inform Magistrate Judge

19      Moulds of the parties' request for an early hearing, and would get back to the parties

20      with a hearing date.  Ms. Gracey then called Ms. Evenson and myself later that day, on

21      the afternoon of September 4, 2008, to say that Magistrate Judge Moulds would like to

22      have a hearing on Plaintiffs' motion the next day, September 5, 2008, at 1:30 p.m.  I

23      stated that I would have to confer with others in my office, but that preliminarily, I could

24      not agree to it because all of Defendants' attorneys had a previous obligation to attend a

25      meeting.  I also stated that such a shortened hearing date was unnecessary given that

26      the parties had already stipulated to a joint briefing schedule and because Defendants

27      had stipulated that the close of discovery would not impact Defendant Cate's deposition

28      testimony.  After conferring with other attorneys in my office, I called Ms. Gracey and Ms.

- 2 -

1   Evenson to confirm that Defendants would be unable to attend a hearing on September

2   5, 2008.  I also requested that the parties be permitted the opportunity to submit briefing,

3   given the significance of the issue.  In a subsequent telephone conversation that same

4   afternoon, Ms. Gracey informed Ms. Evenson and myself that the hearing would be held

5   on Monday morning, September 8, 2008, and that if the parties wished, we could submit

6   briefing the next day, September 5, 2008.

7        4.      Attached as Exhibit A to this declaration is a true and correct copy of

8   relevant portions of the rough transcript of the deposition of Secretary of the California

9   Department of Corrections and Rehabilitation, Matthew Cate, held on Friday, August 29,

10  2008.

11

12        I declare under penalty of perjury that the foregoing is true and correct.  Executed

13  in San Francisco, California, on September 5, 2008.

14

15

16

17                         Samantha Tama

18

19

20

21

22

23

24

25

26

27

28

- 3 -

RoughCate082908.txt

1                UNITED STATES DISTRICT COURT

2           FOR THE EASTERN DISTRICT OF CALIFORNIA

3           AND THE NORTHERN DISTRICT OF CALIFORNIA

4                        ---oOo---

5    RALPH COLEMAN, et al.,              )
                                         )
6                    Plaintiffs,         )
                     vs.                 )
7                                        ) No. 2:90-cv-00520
                                         )    LKK JFM P
8    ARNOLD SCHWARZENEGGER, et           )
     al.,                                )
9                                        )
                     Defendants.         )
10   _____    )
     MARCIANO PLATA, et al.,             )
11                                       )
                     Plaintiffs,         )
12                                       )
                     vs.                 ) No. C:01 1351 TEH
13                                       )
     ARNOLD SCHWARZENEGGER, et           )
14   al.,                                )
                                         )
15                   Defendants.         )
     _____    )
16

17

18           UNCERTIFIED ROUGH DRAFT TRANSCRIPT

19                      DEPOSITION OF

20                     MATTHEW L. CATE

21           _____

22               FRIDAY, AUGUST 29, 2008

23

24   REPORTED BY:  HOLLY THUMAN, CSR No. 6834, RMR, CRR

25                                    (1-412303)

                                                         1


             UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1    YOU HAVE REQUESTED AN UNEDITED, NONCERTIFIED ROUGH

2    DRAFT  TRANSCRIPT.   THE ROUGH DRAFT TRANSCRIPT HAS

RoughCate082908.txt

```
 3    BEEN REQUESTED IN THE FORMAT OF A ROUGH DRAFT, ASCII

 4    DISK AND/OR INSTANTANEOUS TRANSMISSION.

 5    THIS CERTIFIED SHORTHAND REPORTER MAKES NO

 6    REPRESENTATIONS REGARDING THE ACCURACY AND

 7    COMPLETENESS OF SAID REAL-TIME TRANSCRIPT/ROUGH

 8    DRAFT.  THERE MAY BE MISTRANSLATED OR UNTRANSLATED

 9    TEXT, INCLUDING BUT NOT                 LIMITED TO

10    OCCURRENCES WITHIN QUESTIONS BY COUNSEL,

11    ANSWERS GIVEN BY THE WITNESS, COLLOQUY AND

12    GRAMMATICAL                  INACCURACIES.  THESE

13    WILL BE CORRECTED ON THE FINAL

14    CERTIFIED TRANSCRIPT.  THE ABOVE-LISTED LIMITATIONS

15    MAY BE DUE TO THE REAL-TIME SOFTWARE PROGRAM AND/OR

16    TIME CONSTRAINTS PLACED  ON THIS REPORTER IN

17    PROVIDING THIS UNEDITED, NONCERTIFIED  REAL-TIME

18    TRANSCRIPT/ROUGH DRAFT.

19    THIS REAL-TIME COMPUTERIZED TRANSCRIPT/ROUGH DRAFT

20    IS A SERVICE FOR YOUR REVIEW OF THE

21    PROCEEDINGS AND IS NOT PROVIDED FOR, NOR MEANT TO BE

22    USED OR CITED IN ANY TYPE OF COURT PROCEEDINGS.   IT

23    SHALL NOT BE USED BY THE WITNESS TO CORRECT AND

24    SIGN.  ONLY THE FINAL, CERTIFIED TRANSCRIPT SHALL BE

25    USED FOR PURPOSES OF READING AND SIGNING BY THE
```

DO NOT CITE PER CCP2025(b)

2

UNCERTIFIED ROUGH DRAFT TRANSCRIPT

```
 1    WITNESS.             THE COMPLETED CERTIFIED

 2    TRANSCRIPT AND CERTIFIED COPIES SHALL BE DELIVERED

 3    IN APPROXIMATELY ONE TO TWO              WEEKS,

 4    UNLESS ALTERNATE ARRANGEMENTS ARE MADE.

 5    REALTIME AND/OR ROUGH DRAFT TRANSCRIPTS WILL NOT BE
```

RoughCate082908.txt

6    PROVIDED UNLESS A FINAL, CERTIFIED COPY OF THE

7    TRANSCRIPT IS ORDERED.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

DO NOT CITE PER CCP2025(b)

3

UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1                       --o0o--

2        Deposition of MATTHEW L. CATE, taken by the

3    Plaintiffs, at PRISON LAW OFFICE, 1917 Fifth Street,

4    Berkeley, California 94710,commencing at 9:30 a.m.,

5    on FRIDAY, AUGUST 29, 2008, before me, HOLLY THUMAN,

6    CSR, RMR, CRR.

7                       --o0o--

8                     APPEARANCES

9    FOR THE PLAINTIFFS:

Page 3

RoughCate082908.txt

```
10          PRISON LAW OFFICE
            1917 Fifth Street
11          Berkeley, California 94710
            By:  DONALD SPECTER, Attorney at Law
12

13     FOR DEFENDANTS:

14          HANSON BRIDGETT LLP
            425 Market Street, 26th Floor
15          San Francisco, California 94105
            By:  PAUL MELLO, Attorney at Law
16

17          STATE OF CALIFORNIA
            DEPARTMENT OF CORRECTIONS & REHABILITATION
18          Office of Legal Affairs
            1515 S Street, Suite 502
19          By:  BENJAMIN T. RICE, Assistant Secretary

20

21     FOR DISTRICT ATTORNEY INTERVENORS:

22          DISTRICT ATTORNEY, COUNTY OF RIVERSIDE
            82-675 Highwayy 111, Fourth Floor
23          Indio, California 92201
            By:  WILLIAM E. MITCHELL, Assistant District
24     Attorney

25
```

DO NOT CITE PER CCP2025(b)

4

UNCERTIFIED ROUGH DRAFT TRANSCRIPT

```
1      ALSO PRESENT:  PATRICK MURRAY, Videographer.

2

3

4

5

6

7

8

9

10

11

12
```

Page 4

RoughCate082908.txt

13        MR. SPECTER:  Q.  You mentioned that you

14  discussed healthcare with Mr. Dunmoyer.  Have you --

15  well, let me ask you what I hope is a simpler

16  question.

17        Have you -- of the subjects that you --

18  I'll strike that question.

19        You mentioned that you discussed healthcare

20  issues with Mr. Dunmoyer.  Would that include

21  medical and mental healthcare?

22        A.  Yes.

23        Q.  And what were the -- what did you talk

24  about about that with Mr. Dunmoyer?

25        MR. MELLO:  Now I'm going to instruct the

DO NOT CITE PER CCP2025(b)

23

UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1  witness not to answer on the basis the executive and

2  deliberative process privilege.

3        MR. SPECTER:  Okay.  Are you going to

4  instruct him not to answer on all the -- on all

5  conversations he had with Mr. Dunmoyer about any of

6  the topics that he mentioned?

7        MR. MELLO:  Any of the deliberative topics

8  that you have just mentioned, yes.

9        MR. SPECTER:  And all follow-up questions

10  relating to that?

11        MR. MELLO:  Yes.

12        MR. SPECTER:  So I don't have to ask him a

13  hundred questions here?

14        MR. MELLO:  Right.

15        MR. SPECTER:  Okay.

16        MR. MELLO:  If you could explain to me how

Page 21

RoughCate082908.txt

17      it's relevant to the issues in this case as to why

18      crowds is the primary cause of the unconstitutional

19      delivery of healthcare and why the only fix is a

20      prisoner release order, and why -- how it relates to

21      whether there will be an adverse impact on public

22      safety, how those discussions, which are protected

23      by the executive privilege, are relevant, I'm

24      willing to rethink the issue.

25              But I just don't know how -- why we would

                DO NOT CITE PER CCP2025(b)

                                                            24

            UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1      waste the time talking about those discussions when

2      I'm sure there are topics he can answer your

3      questions about and you can get the information you

4      need with respect to the actual issues before

5      this -- before this three-judge panel.

6              MR. SPECTER:  Well, I don't understand you

7      to be making a relevance objection, Paul.  I mean --

8              MR. MELLO:  I'm literally just trying to

9      move the ball forward here.  The last thing I want

10     to do is instruct my witness not to answer all day

11     long.

12             But what I think I'm going to get, because

13     what I think you're going at is, discussions that

14     are clearly protected.  I -- I think a real court

15     would clearly protect the communications with the

16     governor's chief of staff and the governor's cabinet

17     secretary, those deliberative communications I think

18     a real court would protect those, and therefore I'm

19     going to instruct the witness not to answer those

                        Page 22

RoughCate082908.txt
20  questions.
21        But as to moving the ball forward and
22  trying to get the discovery that you within the, I
23  think that there's other ways you can do it.  Gist
24  don't -- I mean, probably I just don't understand
25  why those discussions matter.  Isn't what matters

DO NOT CITE PER CCP2025(b)

25

UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1   what actually happens, what they have done, what
2   they haven't done?
3         MR. SPECTER:  Well, what -- the things you
4   talk about matter, too.  But -- and I know I can ask
5   Mr. Cate questions about some of these issues which
6   don't real to what was discussed.
7         But I believe I'm also entitled, since
8   Mr. Dunmoyer is Mr. Cate's boss, to know what was
9   said during those meetings bay Mr. Dunmoyer and
10  Mr. Cate, and I can't do that if you're going to
11  instruct him not to answer.
12        MR. MELLO:  Understood.  So we're probably
13  at an impasse, is what you're saying.
14        MR. SPECTER:  That's right.
15        MR. MELLO:  Okay.
16        MR. SPECTER:  Q.  So we will take this up
17  with the Court --
18        MR. MELLO:  I'm sure we will.
19        MR. SPECTER:  And see what they say.
20        And would all of the -- I was going to ask
21  him whether he's had any discussions with Mr. --
22  well, with Ms. Kennedy about any of these subjects.
23        MR. MELLO:  And he'll get the same --
                        Page 23

RoughCate082908.txt

24    whether he's had those discussions?

25              MR. SPECTER:  Uh-huh.

              DO NOT CITE PER CCP2025(b)

26

              UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1              MR. MELLO:  I think I'd allow him to answer

2     the foundation question.  With -- I'll make the

3     objection, but he can answer whether he's had

4     discussions on these topics if you'd like.

5              MR. SPECTER:  That would be helpful.

6              MR. MELLO:  Okay.

7              MR. SPECTER:  Q.  Mr. Cate, I have a list

8     of the things you mentioned, so why don't you just

9     say yes or no is to whether you've discussed them

10    with Ms. Kennedy.

11        A.  All right.

12        Q.  And then I will ask you if there's anything

13    else after we get done with this.

14        A.  Okay.

15        Q.  Plans for your first hundred days?

16        A.  In part.

17        Q.  Okay.  The integrative strategy on

18    overcrowding?

19        A.  Again, not directly.  To the extent it

20    covers construction -- component parts of it, yes.

21        Q.  Okay.  Parole reform?

22        A.  Yes.

23        Q.  Budget?

24        A.  Yes.

25        Q.  Vision, mission, goals of the department?

              DO NOT CITE PER CCP2025(b)

27

Page 24

RoughCate082908.txt

UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1      A.   In part.

2      Q.   Okay.   Medical and mental healthcare?

3      A.   Yes.

4      Q.   The three-judge panel proceedings?

5      A.   Yes.

6      Q.   The legislative proposals that we just

7   referred to?

8      A.   Same answer as with Mr. Dunmoyer.

9      Q.   Okay.

10     A.   In part.

11          MR. SPECTER:   And Paul, as I understand it,

12   you would instruct him not to answer based on the --

13   well, why don't you make your objection.

14          MR. MELLO:   Based on the deliberative

15   process and executive privileges, as well as, if any

16   of those discussions occurred in the presence of

17   counsel, the attorney-client privilege.

18          MR. SPECTER:   Q.   Did any of the

19   discussions you had with Ms. Kennedy occur within --

20   with a lawyer present other than yourself?

21     A.   Yes.

22     Q.   And who is the lawyer?

23          MR. MELLO:   Or lawyers?

24          MR. SPECTER:   Q.   Or lawyers?

25     A.   Some of them occurred with Andrea Hoch, the

                DO NOT CITE PER CCP2025(b)

                                                    28


UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1   governor's legal affairs secretary, present.   And

2   I'm not sure whether Mr. Rice or any other lawyer

                    Page 25

RoughCate082908.txt

3    might have been present. I don't believe so,

4    though.

5        Q. Okay. During the time that Ms. Hoch was

6    present, would she participate in these discussions?

7        A. Yes.

8        Q. And was the nature of her participation to

9    provide legal advice?

10       A. Primarily. I'd say yes, she --

11           MR. MELLO: You've answered.

12           MR. SPECTER: Q. But you can't cut him

13   off, Paul.

14           MR. MELLO: I just did. Maybe I shouldn't,

15   but I just did. Okay.

16           MR. SPECTER: Just let him answer the

17   question.

18           THE WITNESS: If she -- the only caveat is,

19   she may have commented on her own opinion on a

20   policy during a discussion. They're informal. But

21   primarily, she provides counsel.

22           MR. SPECTER: Q. So but you discussed

23   other matters beside -- you had discussions on

24   policy issues with Ms. Kennedy. Correct?

25       A. Yes.

                DO NOT CITE PER CCP2025(b)

                                                    29


                UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1        Q. And while you were discussing those

2    policies issues between you and Ms. Kennedy, there

3    were times when Ms. Hoch wasn't providing legal

4    advice. Is that correct?

5            MR. MELLO: I think that misstates his

                        Page 26

RoughCate082908.txt

6    testimony.  And I think we're getting dangerously

7    close to reveal the substance of the communications.

8    And I don't think you want to do that.  Right?

9            MR. SPECTER:  Well, I just -- I didn't ask

10   him about substance.  I just asked him if --

11           MR. MELLO:  If you understand the question,

12   and you can provide an answer that doesn't go to the

13   substance of the communication, feel free to answer

14   it.  Otherwise, I will instruct you not to answer.

15           THE WITNESS:  My understanding is that

16   she's there primarily to provide legal advice.

17   There were policy discussions that took place in her

18   presence.  I couldn't say at what moment she was --

19   I assume she's always acting in her capacity as the

20   governor's lawyer.  That's her job.  And so I would

21   have to guess as to whether she was at any one

22   moment herself acting -- trying to act in that

23   capacity or not.

24           MR. SPECTER:  Q.  Right.  And what I was

25   getting at, in a meeting with three or four people,

                DO NOT CITE PER CCP2025(b)

                                                    30


            UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1    often people talk to each other, and some -- on --

2    the third person is sometimes silent and not

3    providing legal advice.

4            Well, let me ask you this other question:

5            Were the nature of these discussions having

6    to do with legal strategies for the defense of the

7    current cases?

8            MR. MELLO:  Without going into the

9    substance, if you can answer that question.

                Page 27

RoughCate082908.txt

10        Otherwise, I'll instruct you not to answer.

11               THE WITNESS:  Sometimes.

12               MR. SPECTER:  Q.  Sometimes.  Sometimes

13     not?

14        A.  Right.

15        Q.  Okay.  So have you -- when was the last

16     time you met with the governor?  Or let me strike

17     that and rephrase it.

18               When was the last time you spoke to the

19     governor?

20        A.  It seems like it would be 3 weeks ago.

21        Q.  Okay.  And what was the subject of that

22     conversation?

23               MR. MELLO:  Objection.  Oh, the subject.

24               MR. SPECTER:  Yes.

25               MR. MELLO:  You can tell him the subject.

                  DO NOT CITE PER CCP2025(b)

                                                          31


                UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1                THE WITNESS:  The difficulty is, is that if

2      seeing him and talked with him informally, you know,

3      every week or every other week, and sometimes it's a

4      substantive conversation that relates to my subject

5      area of expertise -- or not expertise, but

6      corrections, you know, where I'm reporting to him on

7      an issue related to corrections, and sometimes it's

8      in a bigger format of correctional -- of government

9      officials.

10               I think the last time I talked to him was

11     at the Border Governors' Conference.

12               MR. SPECTER:  Q.  When was the last time

                          Page 28

RoughCate082908.txt
13   you talked to him about issues concerning your job

14   responsibilities, or anything falling within --

15   under the department?

16        A.  I think we spoke briefly about this at the

17   border governors' concerns, which would have been

18   about 2 weeks ago.

19        Q.  And by this, you mean --

20        A.  I mean the Department of Corrections.

21        Q.  I see.

22        A.  But it would have been a 2- or 3-minute

23   conversation.

24        Q.  I see.  Did you -- of all the things that

25   we listed before, the plans for the first hundred

                 DO NOT CITE PER CCP2025(b)

                                                    32


                 UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1    days, have you had a discussion with him about that?

2         A.  In part.

3         Q.  Okay.  The integrated strategy for -- about

4    crowding?

5         A.  In part.

6         Q.  Parole reform?

7         A.  Yes.

8         Q.  The budget?

9         A.  Yes.

10        Q.  Your vision, mission, goals of the

11   department?

12        A.  Again, the highlights, yes.

13        Q.  Yes.  Healthcare, medical and mental

14   healthcare?

15        A.  Yes.

16        Q.  The three-judge panel proceeding?
                         Page 29

RoughCate082908.txt

17        A.   I believe so, yes.

18        Q.   And the legislative proposals we've

19   discussed earlier?

20        A.   I don't believe so.

21        Q.   Okay.

22             MR. SPECTER:   Do you --

23             MR. MELLO:   Same objection if you go into

24   the substance.

25             MR. SPECTER:   So we have an agreement

                  DO NOT CITE PER CCP2025(b)

                                                         33


                  UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1    that --

2              MR. MELLO:   That --

3              MR. SPECTER:   You're going to --

4              MR. MELLO:   We've a disagreement.

5              MR. SPECTER:   We have an agreement that

6    you're going to invoice the deliberative process

7    privilege --

8              MR. MELLO:   For his substantive

9    conversations with the governor, yes.

10             Done, I assume you're also not asking -- I

11   mean, it seems to me that some of these meetings may

12   relate to settlement discussions in this case, and I

13   assume those are off limits.   Right?   You're not

14   asking him to testify about any of those things, are

15   you?

16             MR. SPECTER:   Well, he hasn't even -- we

17   haven't even established that he has had a

18   discussion with the judge about settlement.   So I

19   don't know.

                        Page 30

RoughCate082908.txt
20        MR. MELLO:  The judge?

21        MR. SPECTER:  I mean, I'm sorry, the

22   governor or any of these other people.

23        MR. MELLO:  Okay, that's fine.

24        MR. SPECTER:  You know, why don't we do

25   that so we can sort of -- I mean, if they're within

                DO NOT CITE PER CCP2025(b)

                                                        34


                UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1    the settlement privilege --

2         MR. MELLO:  You're in the asking him to

3    speak about any discussions that he had with the

4    governor's office -- those three individuals we've

5    identified regarding settlement discussions.

6    Correct?

7         MR. SPECTER:  Well, I have to look at the

8    rule.  But anything which comes within the rule, I'm

9    not asking him about, right.  I don't have the rule

10   in front of me.

11        Q.  Do you know the rule by heart?

12        A.  No.

13        Q.  Let me just ask you, of the areas we

14   mentioned in terms of the governor, have you had

15   discussions with him apart from the settlement

16   negotiations that were occurring in the spring of

17   this year?

18        A.  I'm not sure I understand.

19        MR. MELLO:  Yeah, objection.  Vague.

20        MR. SPECTER:  Q.  You were part of

21   settlement negotiations in this case --

22        A.  Right.

23        Q.  -- from the time even before you became
                        Page 31

RoughCate082908.txt

24    secretary until the end of June.  Correct?

25        A.  Correct.

DO NOT CITE PER CCP2025(b)

35

UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1        Q.  During that time period, did you have

2     discussions with the governor about the settlement

3     of this -- the potential for settling this case or

4     anything surrounding that?

5        A.  Yes.

6        Q.  Okay.  Did you have discussions with the

7     governor on the subjects that we just mentioned

8     which weren't involved in the settlement process?

9        A.  It's a difficult question only in this

10    respect, in that the settlement process involved --

11    it was so broad, the topics were so broad, I could

12    have conversations that related to a specific area,

13    that of course are connected to a potential

14    resolution of this matter.

15        But not in the context -- not in the direct

16    context at that moment of particular settlement

17    offer.

18        Does that make sense?

19        Q.  Yes, perfect sense?

20        MR. MELLO:  So I think what he's saying is

21    every discussion he had with these three people was

22    part of the settlement process.

23        MR. SPECTER:  You're free to characterize

24    it that way.  But we'll respectfully disagree.

25        MR. MELLO:  That's what I heard.

DO NOT CITE PER CCP2025(b)

36

Page 32

RoughCate082908.txt

UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1            MR. SPECTER:  Huh?

2            MR. MELLO:  That's what I heard.

3            MR. SPECTER:  I know.  You're free to make

4    your argument.

5        Q.  And the same -- does the same hold true for

6    Susan Kennedy?

7        A.  I think my answers would be slightly

8    different.

9        Q.  And how so?  Why don't you give your answer

10   then.

11       A.  Can you go over your list?

12       Q.  Yes.  Plans for your first hundred days?

13       A.  In less detail than with Mr. Dunmoyer and

14   probably in somewhat more detail than with the

15   governor.

16       Q.  Okay.  That seems appropriate.

17           The integrative strategy to discuss

18   overcrowding?

19           MR. MELLO:  Is the question whether he

20   discussed those in -- as part of settlement

21   discussions?

22           MR. SPECTER:  Well, I think --

23           MR. MELLO:  With those focus?

24           MR. SPECTER:  Did I ask -- can we go off

25   the record for a second?

            DO NOT CITE PER CCP2025(b)
                                                    37


UNCERTIFIED ROUGH DRAFT TRANSCRIPT

1            THE VIDEO OPERATOR:  Going off the record,

2    the time is 10:11.
                    Page 33